## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

DANNY WOOD,

      Appellant,

      v.

DEPARTMENT OF HOMELAND
   SECURITY,

      Agency.

DOCKET NUMBER
CB-7121-18-0001-V-1

DATE:  December 7, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Sherry J. Downer, Tucson, Arizona, for the appellant.

Lauren J. Johnson, San Diego, California, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

### FINAL ORDER

¶1      The appellant has filed a request for review of an arbitration decision, which affirmed his removal for absence without leave and failure to follow a leave restriction letter.  For the reasons that follow, we DENY the appellant's request for review and AFFIRM the arbitrator's decision, except as MODIFIED by this order to find that the agency proved the charges and the reasonableness of

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

the penalty and that the appellant failed to prove his affirmative defense of status-based disability discrimination.

## BACKGROUND

¶2 By letter dated March 21, 2016, the agency proposed to remove the appellant from his GS-9 Mission Support Specialist position for nine specifications of being absent without leave (AWOL) and six specifications of failure to follow a leave restriction letter. Request for Review (RFR) File, Tab 1 at 720-24. In a decision letter dated June 1, 2016, the deciding official found that the appellant's removal was warranted but offered him a last chance agreement (LCA), which would have held his removal in abeyance for 3 years and allowed him to serve a 21-day suspension in lieu of removal. *Id.* at 725-28, 737-40. A union attorney sought to negotiate the terms of the LCA on the appellant's behalf beginning on June 14, 2016. *Id.* at 110, 392-93, 741-45, 749-52. The agency declined to alter the terms of the LCA but extended the deadline for the appellant to accept the LCA until July 14, 2016. *Id.* at 729-31, 746-47. The appellant did not accept the LCA, and the agency effected his removal on or about July 15, 2016. *Id.* at 367, 369, 598.

¶3 The union grieved the appellant's removal action and invoked arbitration on his behalf, arguing as follows: (1) the leave restriction memorandum was unlawful and resulted in harmful error mandating reversal; and (2) the agency discriminated against the appellant on the basis of disability by failing to reasonably accommodate him and by removing him for disability-related misconduct. *Id.* at 112-40. After holding a hearing, the arbitrator issued an arbitration decision denying the appellant's grievance. *Id.* at 39-102. The appellant has requested review of the arbitrator's decision, and the agency has responded. RFR File, Tabs 1, 4-5.

**ANALYSIS**

¶4     The Board has jurisdiction to review an arbitrator's decision under 5 U.S.C. § 7121(d) when the following criteria are met:  (1) the subject matter of the grievance is one over which the Board has jurisdiction; (2) the appellant either raised a claim of discrimination under 5 U.S.C. § 2302(b)(1) with the arbitrator in connection with the underlying action or raises a claim of discrimination in connection with the underlying action under 5 U.S.C. § 2302(b)(1) for the first time with the Board if such allegations could not be raised in the negotiated grievance procedure; and (3) a final decision has been issued. *Jones v. Department of Energy*, 120 M.S.P.R. 480, ¶ 8 (2013), *aff'd*, 589 F. App'x 972 (Fed. Cir. 2014); 5 C.F.R. § 1201.155(a)(1), (c).  In the instant case, each of the necessary conditions has been met, and we therefore find that the Board has jurisdiction to review the arbitration decision.

¶5     The standard of the Board's review of an arbitrator's award is limited; such awards are entitled to a greater degree of deference than initial decisions issued by the Board's administrative judges.  *Sadiq v. Department of Veterans Affairs*, 119 M.S.P.R. 450, ¶ 5 (2013).  The Board will modify or set aside such an award only when the arbitrator has erred as a matter of law in interpreting a civil service law, rule, or regulation.  *Id*.  Even if the Board disagrees with an arbitrator's decision, absent legal error, the Board cannot substitute its conclusions for those of the arbitrator.  *Id*.  Thus, the arbitrator's factual determinations are entitled to deference unless the arbitrator erred in her legal analysis, for example, by misallocating the burdens of proof or employing the wrong analytical framework. *Id*.  Nevertheless, the Board can defer to the arbitrator's findings and conclusions only if the arbitrator makes specific findings on the issues in question.  *Id*. Further, the Board may make its own findings when the arbitrator failed to cite any legal standard or employ any analytical framework for her evaluation of the evidence.  *Id*.

The arbitrator did not make specific findings regarding whether the agency proved the charges, and we modify the arbitration award to find that the agency did so.

¶6    As noted above, the agency charged the appellant with AWOL and failure to follow a leave restriction letter.  RFR File, Tab 1 at 720-22.  The arbitrator found that these charges must be reviewed together because they arose from the same misconduct.  *Id.* at 90-91.  However, she did not determine how the charges should be merged, and we therefore make our own findings on this issue.  *See Sadiq*, 119 M.S.P.R. 450, ¶ 5.

¶7    The Board will "merge" charges if they are based on the same conduct and proof of one charge automatically constitutes proof of the other charge.  *Powell v. U.S. Postal Service*, 122 M.S.P.R. 60, ¶ 10 (2014).  Here, the agency charged the appellant with AWOL on December 22, 2015, and January 8, 13-14, 20, and 28, 2016, because he failed to provide medical documentation regarding his absences on those dates pursuant to the leave restriction letter.  RFR File, Tab 1 at 680, 688, 694, 700, 705, 709, Tab 4 at 28, 38-39.  The agency also charged him with failure to follow the leave restriction letter on those same six occasions.  RFR File, Tab 1 at 721-22.  Therefore, we find that it is appropriate to merge the six specifications of failure to follow the leave restriction letter into the AWOL charge.  *See McNab v. Department of the Army*, 121 M.S.P.R. 661, ¶ 4 n.3 (2014) (finding that the administrative judge properly merged into the AWOL charge specific instances of failure to follow leave restriction letter procedures that were also listed under the AWOL charge); *Westmoreland v. Department of Veterans Affairs*, 83 M.S.P.R. 625, ¶ 6 (1999) (merging charges of failure to follow leave-requesting procedures into the charge of AWOL when the charge of AWOL was based solely on the appellant's failure to follow the leave requesting procedures), *aff'd*, 19 F. App'x 868 (Fed. Cir. 2001), *overruled on other grounds as recognized in Pickett v. Department of Agriculture*, 116 M.S.P.R. 439, ¶ 11 (2011).  Because the failure to follow the leave restriction letter charge merges

into the AWOL charge, proof of the AWOL charge will constitute proof of the failure to follow the leave restriction letter charge. *See Powell*, 122 M.S.P.R. 60, ¶ 10.

¶8 To prove a charge of AWOL, an agency must show by preponderant evidence that the employee was absent without authorization and, if the employee requested leave, that the request was properly denied.[2] *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 28 (2015), *overruled on other grounds by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-25. Here, although the arbitrator found that the agency removed the appellant for "just and sufficient cause," she did not cite any legal standard, employ any analytical framework for her evaluation of the evidence, or consider whether the agency proved either charge.[3] RFR File, Tab 1 at 90-102. Therefore, the Board herein makes its own findings as to whether the agency proved the charges. *See Sadiq*, 119 M.S.P.R. 450, ¶ 5.

¶9 In support of the AWOL charge, the agency alleged the following: on December 22, 2015, the appellant failed to report for duty and did not contact his supervisor until 3.5 hours after the beginning of his scheduled shift, resulting in 3.5 hours of AWOL; on January 8, 13-14, 20, 28, and February 1 and 2, 2016, he failed to report for duty as scheduled without authorization and, as a result, was charged 8 hours of AWOL for each day; and, on February 18, 2016, he failed to report for duty at his scheduled time and, after the agency denied his request for annual leave because he needed more sleep, reported for duty approximately 1 hour after his scheduled start time, resulting in 1 hour of AWOL. RFR File,

---

[2] A preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

[3] In the background section of the arbitrator's decision, the arbitrator set forth the parties' arguments, which included citation to legal standards and argument regarding whether the agency proved the charges. RFR File, Tab 1 at 56-90. However, her own analysis is devoid of any reference to the applicable legal standards and does not address whether the agency proved the charges. *Id.* at 90-98.

Tab 1 at 720-21. The agency conceded, and the record reflects, that the specification alleging that the appellant was AWOL on February 2, 2016, was in error. RFR File, Tab 1 at 360-61, 715, Tab 4 at 39. Therefore, we do not sustain that specification. It is undisputed, however, that the appellant was absent on the other dates and for the other hours for which he was charged AWOL and that the agency did not authorize those absences. RFR File, Tab 1 at 686, 692, 698, 703, 708, 715, 719. Thus, we next determine whether the appellant requested leave for those absences and, if so, whether the agency properly denied his requests. *See Savage*, 122 M.S.P.R. 612, ¶ 28.

¶10 The appellant requested sick leave or "emergency annual leave" due to a "flare up (disability related)" or illness after his December 22, 2015, January 8, 13-14, 20, 28, and February 1, 2016 absences and requested 1 hour of annual leave on February 18, 2016. RFR File, Tab 1 at 681, 685, 688, 690, 694-95, 701, 705-06, 710, 717, Tab 4 at 158. According to the agency, it properly denied the appellant's requests for leave on these dates because he failed to comply with an August 6, 2015 leave restriction letter, which required him to request nonemergency leave 3 workdays in advance and to provide, within 3 days of returning from a medical-related absence, a medical certification containing the date he was seen by a healthcare provider, the dates and the reason he was incapacitated for work, and the provider's name, telephone number, signature, and date. RFR File, Tab 1 at 678-79, Tab 4 at 28, 38-39. The agency argued that the appellant did not submit any medical documentation regarding his absences on January 8, 14, 20, 28, or February 1, 2016, and that, although he submitted notes regarding his December 22, 2015 and January 13, 2016 absences, they were insufficient because they did not give any reason for excusal or state that he was incapacitated for work.[4] RFR File, Tab 4 at 38-39. The agency further argued

[4] Regarding his December 22, 2015 absence, the appellant submitted a note from the Yuma Vet Center stating that he "was present at the Yuma Vet Center on Tuesday, December 22, 2015, to initiate services with this agency." RFR File, Tab 1 at 683. Regarding his January 13, 2016 absence, he submitted a note stating that he checked in

that it properly denied the appellant's request for 1 hour of annual leave on February 18, 2016, which he made 5 minutes before the start of his shift, because he did not make the request 3 days in advance, as required by the leave restriction letter, or submit medical documentation of incapacitation. *Id.* at 40.

¶11    The appellant did not dispute the agency's contention that he failed to timely request leave or submit medical documentation in accordance with the leave restriction letter but argued that the charges could not be sustained because the leave restriction letter was unlawful. *Id.* at 112-19. Specifically, he alleged that the requirement in the leave restriction letter that he submit an application for leave accompanied by an acceptable medical certification within 3 days following his return to work from an absence for medical reasons violated an Office of Personnel Management (OPM) regulation, 5 C.F.R. § 630.405(b), which allows an employee between 15 and 30 days to provide medical documentation regarding an absence. RFR File, Tab 1 at 112-14. He argued that the agency's failure to comply with the time provisions of section 630.405(b) constituted harmful error under 5 U.S.C. § 7701(c)(2)(A) and warranted reversal of his removal. *Id.* at 115-19.

¶12    The arbitrator found that, although the appellant was on notice of the requirements of the leave restriction letter, he failed to submit adequate medical documentation in connection with any of his absences at any time within 30 days from the date of his absence. *Id.* at 94-98. She considered the appellant's contention that the leave restriction letter violated OPM's regulation and found that, although the 3-day requirement in the leave restriction letter was inconsistent with the regulation, the inconsistency was not harmful error or prejudicial to the appellant because the record did not show that he would have provided sufficient medical documentation, even if he had been given 30 days to

_____

for a 10 a.m. appointment using the automated check-in system at the Yuma Community Based Outpatient Clinic. *Id.* at 697.

do so.[5]  *Id.*  Although the appellant disagrees with these findings on review, *id.* at 11-20, he has not shown that the arbitrator erred as a matter of law in interpreting civil service law, rule, or regulation.  Therefore, we defer to her conclusions.  *Sadiq,* 119 M.S.P.R. 450, ¶ 5.

¶13      It is unclear from the record whether the appellant had accrued sick or annual leave balances at the time of the AWOL charges at issue in this appeal between December 2015 and February 2016.  RFR File, Tab 1 at 678 (reflecting that, as of August 6, 2015, the appellant had a balance of 12.2 hours of annual leave and 13.3 hours of sick leave).  The Board has found, however, that whether an employee has an accrued annual leave balance is irrelevant to the question of whether the agency abused its discretion in denying his request for leave.  *Roby v. Department of Justice*, 59 M.S.P.R. 426, 429 (1993).  An employee must request approval to take annual leave in accordance with agency policies; he cannot simply demand it.  *Id.*  Because we defer to the arbitrator's finding that the appellant did not comply with the leave restriction letter in connection with his absences on December 22, 2015, January 8, 13-14, 20, 28, and February 1 and 18, 2016, we find that the agency properly denied his requests for annual leave and "emergency annual leave" on those dates.

¶14      As noted above, in addition to requesting "emergency annual leave" for his absences on December 22, 2015, January 8, 13-14, 20, 28, and February 1, 2016,

---

[5] As the agency points out on review, the alleged impropriety of the leave restriction letter does not come within the harmful error rule because it does not concern the procedures that the agency applied in arriving at its decision to remove him.  RFR File, Tab 4 at 10-11; *see* 5 U.S.C. § 7701(c)(2)(A) (providing that an agency action may not be sustained if an appellant "shows harmful error in the application of the agency's procedures in arriving at such decision"); *Boatman v. Department of Justice*, 66 M.S.P.R. 58, 63 (1994).  Rather, the alleged impropriety of the leave restriction letter, which concerns the circumstances under which the charged misconduct occurred, is relevant to the merits of the action or to the reasonableness of the penalty imposed.  *See Boatman*, 66 M.S.P.R. at 63.  It appears that the arbitrator properly considered the appellant's challenge to the propriety of the leave restriction letter as it related to the charges and not whether it constituted harmful error under 5 U.S.C. § 7701(c)(2)(A).  RFR File, Tab 1 at 93-99.

the appellant also requested sick leave or informed the agency that his absence was due to illness or a disability-related "flare up."  RFR File, Tab 1 at 681, 688, 690, 694-95, 701, 705-06, 710, Tab 4 at 158.  Pursuant to OPM's regulations, "[a]n agency may grant sick leave only when the need for sick leave is supported by administratively acceptable evidence."  5 C.F.R. § 630.405(a).  While an employee's self-certification of the reasons for his absence may be administratively acceptable in some circumstances, "[a]n agency may also require a medical certificate or other administratively acceptable evidence as to the reason for an absence for any of the purposes described in § 630.401(a) for an absence in excess of 3 workdays, or for a lesser period where the agency determines that it is necessary."  *Id.*  Section 631.401(a) provides, among other things, that an agency must grant sick leave to an employee when he receives medical treatment or is incapacitated for the performance of his duties by physical or mental illness.  Generally, an employee must "provide administratively acceptable evidence or medical certification for a request for sick leave no later than 15 calendar days after the date the agency requests such medical certification" but may have up to 30 days if 15 days is not "practicable under the particular circumstances."  5 C.F.R. § 630.405(b).  The regulations further provide that an employee who fails to submit the "required evidence or medical certification within the specified time period is not entitled to sick leave."  *Id.*

¶15        Here, the agency was well within its right to require medical documentation from the appellant and, with the exception of the 3-day requirement discussed above, the requirements set forth in the leave restriction letter were reasonable and consistent with the regulations.  RFR File, Tab 1 at 678-79; *see* 5 C.F.R. §§ 630.401, 630.405(a).  Although the 3-day requirement was inconsistent with the regulations, the agency did not deny any request for leave because of the appellant's failure to submit medical documentation within that timeframe.  Rather, the agency memoranda documenting these absences each state that, pursuant to the leave restriction letter, the appellant would be charged AWOL

"until such time that he provides medical documentation of his illness," or words to that effect. RFR File, Tab 1 at 680, 688, 694, 700, 705, 709. As the arbitrator found, the appellant did not submit adequate medical documentation within 30 days of any absence, *id.* at 98, and the March 21, 2016 proposed removal indicates that "to date" the appellant still had not submitted adequate medical documentation of his absences, *id.* at 722-23. Because the appellant failed to comply with the valid provisions of the leave restriction letter by submitting acceptable medical documentation within 30 days of his absence or at any time prior to his proposed removal, we find that the agency properly denied his requests for sick leave on December 22, 2015, January 8, 13-14, 20, 28, and February 1, 2016.

¶16 In light of the foregoing, we find that the agency proved that the appellant was AWOL on December 22, 2015, and on January 8, 13-14, 20, 28, February 1 and 18, 2016, and we therefore sustain the charge of AWOL. The failure to follow the leave restriction letter charge is likewise proven and sustained by virtue of its merger into the AWOL charge. *See Powell*, 122 M.S.P.R. 60, ¶ 10.

The arbitrator correctly found that the agency established nexus between the charges and the efficiency of the service.

¶17 In addition to the requirement that the agency prove its charge against the appellant, the agency also must prove that there is a nexus, i.e., a clear and direct relationship between the articulated grounds for the adverse action and either the appellant's ability to accomplish his duties satisfactorily or some other legitimate Government interest. *Powell*, 122 M.S.P.R. 60, ¶ 11. The arbitrator appeared to find that the agency established nexus, stating that the agency removed the appellant for reasons that promoted the efficiency of the service and explaining that the appellant's AWOL required the agency to use staff for "welfare checks" on him and to cover his important work. RFR File, Tab 1 at 98-99. *Id.* We discern no legal error in the arbitrator's finding, which the appellant has not challenged on review, and we therefore defer to it. *See Adams v. Department of*

*Labor*, 112 M.S.P.R. 288, ¶ 8 (2009) (holding that any sustained charge of AWOL is inherently connected to the efficiency of the service as an essential element of employment is to be on the job when one is expected to be there).

<u>The arbitrator correctly found that the appellant did not prove his affirmative defense of disability discrimination based on failure to accommodate.</u>

¶18    The Rehabilitation Act requires an agency to make a reasonable accommodation to the known physical and mental limitations of an otherwise qualified individual with a disability unless the agency can show that accommodation would cause an undue hardship on its business operations. *Clemens v. Department of the Army*, 120 M.S.P.R. 616, ¶ 17 (2014).   While an individual with a disability may request a modification to the work environment or adjustments in how and when a job is performed due to a medical condition, this request does not necessarily mean that the employer is required to provide the requested modification or adjustment.  *White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 12 (2013).  A request for reasonable accommodation is the first step in an informal, interactive process between the individual and the employer.  *Id.*  The employer may ask the individual relevant questions that will enable it to make an informed decision about the request.  *Id.*  When the existence or nature of a reasonable accommodation is not obvious, and the employee fails to respond to the employer's reasonable request for medical information or documentation, an agency will not be found to have violated its duty to provide a reasonable accommodation.  *Id.*

¶19    Here, the arbitrator found that, by virtue of his diagnosis of post-traumatic stress disorder (PTSD), the appellant was an individual with a disability.  RFR File, Tab 1 at 99-100.  She did not address whether the appellant was a qualified individual, but concluded that the agency did not fail to reasonably accommodate him because he did not fulfill his obligation to engage in the interactive process. *Id.* at 100-02.  In so finding, she determined that the agency's requests for information regarding the appellant's disability and the accommodation he

required were reasonable and lawful and that the appellant failed to sufficiently participate in the interactive process prior to his removal. *Id.* at 101-02.

¶20 The appellant challenges this finding on review, arguing that the agency was aware that his absences were related to his disability and had medical documentation regarding his disability as of November 16, 2015. *Id.* at 26-27. He argues that his need for an accommodation—such as a liberal leave policy, telework or reassignment—was obvious and medical documentation was therefore not necessary. *Id.* at 31-36. He further argues that the arbitrator ignored the agency's failure to engage in the interactive process after he requested an accommodation in September 2015 and failed to address the agency's obligation to provide temporary accommodations and prospective accommodations.[6] *Id.* at 29-32.

¶21 Although the appellant disagrees with the arbitrator's factual findings and takes issue with her failure to expressly consider his right to temporary and prospective accommodations, he has not shown any legal error in her analysis. Therefore, we defer to her conclusion that the appellant failed to prove that the agency violated the Rehabilitation Act by failing to reasonably accommodate him. *See Sadiq*, 119 M.S.P.R. 450, ¶ 5; *Young v. Department of Justice*, 93 M.S.P.R. 326, ¶ 7 (2003) (holding that an arbitrator's finding that an appellant did not prove her discrimination claims is a factual determination entitled to deference, unless the arbitrator erred in his legal analysis).

<u>The arbitrator did not address the appellant's affirmative defense of status-based disability discrimination, and we modify the arbitration award to find that the appellant failed to prove this claim.</u>

¶22 The appellant argued before the arbitrator that his removal was "unquestionably based on his disability-related absences" and that, because his

---

[6] The appellant also appears to argue that the agency discriminated against him when it offered him an LCA in which he had to "forfeit his right to seek future accommodations in order to keep his job." RFR File, Tab 1 at 36-38. However, the LCA in the record contains no such provision. *Id.* at 737-40.

removal was premised on disability-related conduct, it constituted a per se violation of the Rehabilitation Act. RFR File, Tab 1 at 137-40. In his request for review, he argues that the arbitrator failed to consider this affirmative defense and reiterates his contention that the agency discriminated against him on the basis of his disability by removing him for his disability-related absences.[7] *Id.* at 21-24. Although the arbitrator observed that the appellant raised this claim, she did not address it in her analysis. *Id.* at 86-89, 90-102. Therefore, we have no basis upon which to defer to the arbitrator on this affirmative defense and make our own findings. *See Sadiq,* 119 M.S.P.R. 450, ¶ 5.

¶23 To establish an affirmative defense of status-based disability discrimination, an appellant must show by preponderant evidence that his disability was a motivating factor in the contested personnel action, even if it was not the only reason. *Pridgen,* 2022 MSPB 31, ¶¶ 37, 40; 5 C.F.R. § 1201.56(b)(2)(i)(C). Here, the only argument in support of this affirmative defense advanced by the appellant is that his removal was based on his disability-related absences. RFR File, Tab 1 at 21-24. Contrary to his characterization of the reasons for his removal, however, the agency did not remove him for excessive absences; rather, it removed him for eight instances of AWOL within 2 months and failure to follow the leave restriction letter. *Id.* at 21-24, 137-40, 720-22. The appellant has not alleged that his disability prevented him from complying with the leave restriction letter, which resulted in his absences being designated as AWOL, and therefore has not shown that his removal was based on his disability rather than on the charged misconduct. *See Adams,* 112 M.S.P.R. 288, ¶ 18 (finding that the

---

[7] In support of his contention that his removal based on disability-related absences constitutes a per se violation of the Rehabilitation Act, the appellant cites cases from the U.S. Court of Appeals for the Ninth Circuit (Ninth Circuit). RFR File, Tab 1 at 22-24. While decisions of the U.S. Court of Appeals for the Federal Circuit are controlling authority for the Board, other circuit courts' decisions are considered persuasive, but not controlling, authority. *See Morris v. Department of the Navy,* 123 M.S.P.R. 662, ¶ 15 n.12 (2016). The appellant has not explained why the Board should follow Ninth Circuit precedent here, rather than the Board's case law, and we find no basis to do so.

appellant failed to show that he was removed on the basis of his drug addiction rather than the charged misconduct because, among other things, he did not show that his drug addiction precluded him from complying with his leave restriction).

¶24     We acknowledge that many of the appellant's unscheduled absences were likely occasioned by his PTSD and that his removal was therefore at least indirectly related to his disability. Nonetheless, the Rehabilitation Act does not immunize an employee with a disability from being disciplined for misconduct in the workplace, provided that the agency would impose the same discipline on an employee without a disability. *Laniewicz v. Department of Veterans Affairs*, 83 M.S.P.R. 477, ¶ 5 (1999). Here, the appellant has not alleged, or presented any evidence to suggest, that the agency tolerated the sort of misconduct that he committed from employees who did not have a disability. Therefore, even if his misconduct was related to his disability, he has not shown that it was a motivating factor in the agency's decision to remove him.[8]

¶25     In light of the foregoing, we find that the appellant failed to prove his status-based disability discrimination affirmative defense.

<u>The arbitrator failed to make specific findings regarding the reasonableness of the penalty, and we modify the arbitration decision to find that the penalty of removal is within the tolerable limits of reasonableness for the sustained charges.</u>

¶26     The deference that is due to an arbitrator's findings extends to findings related to penalty determinations. *Pinegar v. Federal Election Commission*, 105 M.S.P.R. 677, ¶ 50 (2007). In making these findings, arbitrators are required to apply the same rules that the Board applies. *Id*. When the arbitrator does not apply those rules, her penalty determination is not entitled to deference, and the Board will conduct its own analysis. *Id*.

---

[8] Because the appellant failed to show that his disability was a motivating factor in the agency's decision to remove him, we do not reach the question of whether discrimination was a "but-for" cause of the removal action. *See Pridgen*, 2022 MSPB 31, ¶¶ 20-24.

¶27     When, as here, all of the agency's charges are sustained, the Board will review the agency-imposed penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within the tolerable limits of reasonableness.  *Id.,* ¶ 53; *see Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981) (articulating a nonexhaustive list of 12 factors that are relevant in assessing the appropriate penalty for an act of misconduct).  In making this determination, the Board must give due deference to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that managerial judgment has been properly exercised.  *Pinegar*, 105 M.S.P.R. 677, ¶ 53.  The Board will modify or mitigate an agency-imposed penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty clearly exceeds the bounds of reasonableness.  *Id*.

¶28     The arbitrator found that the agency removed the appellant for just and sufficient cause and for reasons that promoted the efficiency of the service.  RFR File, Tab 1 at 98-99.  However, she did not address whether the deciding official considered the relevant *Douglas* factors or exercised management discretion within the tolerable limits.[9]  RFR File, Tab 1 at 58, 91-93.  Because the arbitrator failed to apply the same rules that the Board applies in reviewing an agency-imposed penalty, we conduct our own analysis.  *See Pinegar*, 105 M.S.P.R. 677, ¶ 50.

¶29     The record reflects that the deciding official considered as aggravating factors the nature and seriousness of the charge as related to the appellant's duties, his prior discipline for AWOL and reporting to work under the influence of alcohol, his past work record, the fact that he was clearly on notice of the

---

[9] In the arbitration decision, the arbitrator set forth the agency's argument regarding penalty and quoted the decision letter, which both included a discussion of the *Douglas* factors.  RFR File, Tab 1 at 58-60, 91-93.  However, her own analysis is devoid of any reference to the applicable law or consideration of whether the deciding official considered the relevant factors.  *Id.* at 90-102.

agency's expectations, and the effect of the appellant's continued disregard of agency policies and procedures on management's confidence in his ability to perform his duties and responsibilities. RFR File, Tab 1 at 362-66, 725-26. As mitigating factors, the deciding official considered the appellant's medical issues, his difficulty obtaining treatment from the Department of Veterans Affairs, and his potential for rehabilitation. *Id.* at 366-67, 726. The deciding official testified that he considered the availability of alternative sanctions and decided to offer the appellant the LCA, which he ultimately did not accept. *Id.* at 367-68. Based on his consideration of these factors, the deciding official concluded that removal was an appropriate penalty. *Id.* at 726.

¶30    In light of the foregoing, we find that the deciding official considered the relevant *Douglas* factors and that management exercised its discretion within the tolerable limits of reasonableness in imposing the appellant's removal. *See McCauley v. Department of the Interior*, 116 M.S.P.R. 484, ¶ 14 (2011) (finding that the penalty of removal for AWOL does not exceed the tolerable limits of reasonableness, particularly when the employee has prior discipline for the same offense); *Johnson v. General Services Administration*, 46 M.S.P.R. 630, 635 (finding removal for the charges of failure to follow proper leave procedures and AWOL to be within the bounds of reasonableness), *aff'd*, 944 F.2d 913 (Fed. Cir. 1991) (Table).

¶31    This is the Board's final decision regarding the request for review of the arbitration decision.

## NOTICE OF APPEAL RIGHTS[10]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b).

---

[10] Since the issuance of the arbitration decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11]  The court of appeals must <u>receive</u> your petition for

---

[11] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of

review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Jennifer Everling

FOR THE BOARD:                          _____
                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.